Case number 21-3906, Matthew Burghardt et al. v. Ezekiel Ryan et al. 15 minutes for the plaintiffs, 15 minutes to be shared by defendants. Ms. Gelsimino, you may proceed for the appellants. Thank you. Good morning. Good morning. May it please the Court, Sarah Gelsimino and Jacqueline Green from the Law Firm of Freedmen Gilbert and Gerhardt Stein on behalf of the plaintiffs' appellants, in this case Matthew Burghardt and Christian Beard. Your Honors, may I please reserve three minutes for rebuttal? Sure. Thank you. This is a police shooting case, and we are here because the District Court improperly granted summary judgment to the defendant appellant officers, in this case, despite significant disputed material facts. Matthew Burghardt and Christian Beard were shot by defendant officers Ryan and London on February 13, 2018. Matthew Burghardt was shot in multiple places in his body, including in his head, required significant emergency surgery to try to save his life, and is now permanently blind and cognitively impaired to the extent that his father has had to become his guardian, and his parents are responsible for his day-to-day care because he can't take care of himself. Christian Beard was also shot multiple times, required surgery, therapy, and continues to live, impacted by the shooting every day with pain and limited mobility. Together, the officers fired six gunshots into the passenger side of the van in which Christian Beard sat in the driver's seat and Matthew Burghardt reclined in the passenger seat. You know, I just wonder, as a factual matter, has there been any sort of forensic examination that would indicate whether all of the shots were fired when the officers are on the side of the van as opposed to when Officer Ryan is in front of the van? That's an excellent point and goes straight to the heart of the disputed issues in this case. The BCI did a forensic examination of the van, and the only gunshot evidence in the van is in the passenger side door. There are four gunshot holes in the door, and then that's the only window that was shot out as well. So the forensic evidence does show that both of the officers were standing at the side of the vehicle when they shot into the passenger side of the car. There's not forensic evidence that would indicate that, I guess, Officer Ryan was firing while he was in the path, in the front, before he moves to the side. That is accurate, and that is one of the material disputed facts here that has to be presented to the jury that the district judge erroneously passed over. I presume that you would want us to segment this encounter, I guess? I mean, that's kind of a Fourth Amendment thing. One way of analyzing this is to say, well, Officer Ryan was in front, and he was in danger, and under some cases, he's allowed to shoot because he could get run over, etc. A different way to analyze it would be to say, well, he was in front for a moment when the van's moving backwards, but by the time they're pulling the trigger, he's to the side and shouldn't be shooting anymore. Do you have an opinion as to whether the law directs us to think about this in one way or the other? Well, as to the constitutional issue, it is the moment before the shooting that is the relevant area of inquiry, I agree. I know I'm kind of putting you on the spot. Is there a case that says that? I can't name a case for you, although typically I'm arguing against the segmented analysis. Judging for the state law analysis, the entire picture is a much broader determination. But here for the constitutional analysis, whether or not Ryan was in front of the vehicle is a key material disputed fact. That goes to whether London had any justification to shoot and whether Ryan had any justification to shoot. And to highlight that disputed fact, I want to direct you to the surveillance footage. There's multiple video footage. There's body camera footage. This one is farther back. That's exactly correct. And if you look at that, if you start around 546.50 on the timestamp, that's kind of where you start to see things happen, you can see London is off to the passenger side of the vehicle. Sergeant East is at the driver's side using the Slim Jim to try to get in. And Ryan is there next to him. You can watch Ryan's head. It's kind of over the SUV that's right there. As the car begins to move back, you can see Ryan step back. And it's not until the car, the van hits the unoccupied vehicle behind it, that he then moves in front of the vehicle, stands at the side of the vehicle and shoots. So at that point, he's shooting at... Can you say that again? Absolutely. The sequence about moves in front but then stands at the side. I kind of lost that. It took me a while to get it to, so I totally understand that. And actually, if you watch this video with a VLC media player, you can go frame by frame or slow it down, which is helpful. Explain to me what you mean by he goes in front and then... I didn't understand front and then side. Sure. So Officer Ryan is first off to the front driver's side, kind of from an angle from the van. So van is here, he's kind of over here. He first, when the van starts moving back, he moves backwards. So he's going farther off to the driver's side. Correct. Well, no, farther off, kind of away from the vehicle. Yes. Not in the direction of the passenger. So if we're in front of the van looking, he's to the right. Yes, and moving backwards away from it. Yes. And he's moving farther to the right initially, you're saying. Well, as the van is moving back, it's kind of changing directions. And Ryan is moving back away from the path of the vehicle, I think is what a jury could determine from looking at that video. And Sergeant East actually moves back with him. So they're standing there together at first. And then East moves off to the right toward his vehicle with the intention of getting in his vehicle to use it to box in the van or to pursue the van. He doesn't even pull his gun because even as the van is moving backwards toward this unoccupied vehicle, East does not recognize that it's being used as a deadly weapon or that there's any threat which would justify deadly force. So after Ryan first is standing back away from the van, the van then strikes the unoccupied police cruiser behind it. At that point, it's not until that point that East then moves to his left. So then he moves in front of the van to the left, right next to London, stands at the passenger side, and that's where you can see him shooting. Now, he claims that he was shooting toward the engine block as he was running, but that is disputed by the forensic evidence. It has to be disputed by the jury. Is there like a SUV, like a Chevy Trailblazer or something in between the officers and the van at the time they're shooting? No. Ryan actually moves away from the SUV to closer to the van, to where London is, and then begins to shoot. When he's first standing on the driver's side, more toward the driver's side, and then moves backwards, he's standing directly next to an SUV, which could be a Tahoe kind of van. I'm not sure exactly what it is. And rather than move behind that or use that for cover, he instead runs in front of that, between that SUV and the van, toward London. He claims that he's going toward the building or something for cover, but again, that's a disputed fact. The jury could determine whether or not that's credible, and then shoots from the side. So when he shoots, the van is not moving forward. He's not in the pathway of the van. He knows that East isn't in the pathway of the van, and he also knows that London is not in the pathway of the van. So just setting aside the facts, the hardest part for plaintiffs in these cases is obviously the clearly established prong, and the way the Supreme Court, they had a couple cases, this term even, they've suggested that you really need to identify cases that are fairly directly on point in order to show that the officer's specific conduct was unconstitutional. I think the way I think about it is, if I read this case and I looked at the facts in the light most favorable to the plaintiff, it would have been obvious to any competent officer that this was unconstitutional. And so I'm just curious what you think is the case or the cases that establishes why the conduct at issue here was clearly established unconstitutional under the Fourth Amendment. Sure. I think that this has been clearly established in the circuit all the way back to Smith v. Cupp in 2005, which is very similar in terms of the situation. There's a person, actually a person who stole a police car, who is accused of a nonviolent criminal action. He's driving away in a police car. And the question, the pivotal question there is, was there anyone in the pathway of the vehicle that him driving away would cause a threat to the person in the street? That question has been consistently answered in the same way in cases with similar fact patterns with Cupp, Kirby, Gadawa, many cases in this, and clearly distinguished from other cases. It seems to me that this might be in the middle ground of that Cupp case and then Freeland. Cupp seems to stand for the proposition if the car goes by you and you're shooting kind of from behind, that that would be enough. But Freeland suggests that if there's a chance that the car is going to come towards you, that that would be enough. And so in this case, it seems to me the shooting occurred before there was any attempt to move forward from watching the video. But it seems to me there was only one way out, and that was moving forward. So does that put this in a gray area? I guess would be the kind of why shouldn't I rule that that would put this case in a gray area between the two Smith cases? Sure, I don't think so. One, in terms of the Cupp standing for the premise that once the car is moved beyond, that shooting wouldn't be justified, that is accurate that in that case he did shoot from behind. However, the question considered by the court and what that stood for was not shooting from behind. It was who was in front of the car. It was only significant that he shot from behind because there was no one in front of him. If you look at other case law, it might have, that car may have, the shooting may have been justified in that case had there been people on the street in front of the vehicle or occupied vehicles in front of the vehicle, and so other people who were threatened. But that wasn't the case in Cupp, and so that's why the court denied summary judgment, and that's similar to our case here. Or at least the jury could believe that. That's exactly right, Judge. I mean our court did call out, as the district court itself quoted from our opinion, our court said that the officer fired as he ran toward the driver's side of the car after the car had passed. Well, that's the district court's paraphrase. Of Cupp. Yeah, but it was after the car had passed. That is actually accurate. That was the rationale of Cupp, is that there are different, some people said he was shooting at him as he was coming towards him, and some people said he was shooting after it had already passed, more or less. Correct, and there was a dispute about that. It was a dispute, but we had to go with the one that favored the party that got the favor. This case, as I think Judge Murphy suggests, is different in a way because it isn't moving forward, but it looks, when you look at the video, like he's got to have intended to move forward, or at least the police will think he's moving. It's like I'm backing out, I hit something, now I'm going to move forward. Not like I'm going to back my, it's sort of counterintuitive to think of escaping by going in reverse. I mean, you back up until you're clear enough to go forward. That's how people drive, isn't it? However, he had already been shot. That shot, there's a question of fact about whether that van was shot before the point of contact with the car behind it, as it was moving backwards, or immediately upon hitting the unoccupied cruiser behind it. I mean, I've listened, I heard the crash, and then I heard the six bullets. Does this implicate, what is that, the Supreme Court high-speed chase case about videos? Harris. Scott P. Harris. Scott P. Harris, that's it. Every case, somebody comes to us and says, yeah, but Scott P. Harris. No, I agree, that's always, I don't think so, Judge. But I did hear a crash, and then six bullets. Well, the officers themselves have testified, at least London, that he's not sure which caused it. Although, was he, and I believe that Beard testified that he crashed because he was shot. And so, you know, the question, there really has to be some kind of a, some other indication that the car would be used as a deadly weapon, because simply fleeing is not sufficient to use deadly force. There has to be some indication that the, exactly. But if he's, simply fleeing is not, but if you flee in a way that threatens people, then it isn't. That's where the line is. That is the clearly established law, exactly, and there's a material, excuse me. You know, the district court wrote a thoughtful opinion. Where did it go wrong? In this district court opinion? It went wrong in completely disregarding the material disputes of facts, but whether any officer was actually threatened. Oh, whether they were actually in front. But what does in front mean? Does in front mean you have to be in gear going in that direction? Or can you be in front if you're in the general front area where somebody is about, presumably, to put the car in gear and go in that direction? Well, it's a lot different from CUP, where he's speeding by, according to some witnesses. Is that right? That is the fact pattern in CUP. Godowa also speaks to this, and I think is also instructive for this court. But the question is whether any person is threatened by, of serious and imminent bodily injury by that car. That's the only way that deadly force would be justified, and in this case, given the positioning, there are significant material effects that the jury should be able to determine whether that was the case. What's the version of the facts that would be most beneficial to you that the district court declined to accept as a possible scenario? Briefly, I recognize that I am out of time, but I will respond to you, Judge. As to the shooting by London, the facts show, when taken in the light most favorable to the plaintiff, that London was aware that there was no one in front of the van at the time that he shot. The van was stopped, was stationary, or moving backward toward an unoccupied... You said that there was somebody in the front when there was not somebody in front. Is that what your argument is? Yes, the district court relied on the fact that there was someone in the pathway of the vehicle. I believe it must have been Ryan, or potentially East, although London testified that East was not in front of the vehicle. He had run off to the other side, and the video belies any other... Ryan thinking that East was anywhere near the front of the vehicle because he was right next to East as soon as East ran away toward his East car, which was outside of the pathway of the vehicle. Ryan, the officer who was, for some period of time, potentially in the path that the van were to come forward, I mean, he's one of the two shooters. Yes. And it would appear that he's shooting, most of his shots are when he's off to the side. That is what the evidence shows, Judge, yes. When he is clearly not in the pathway of the vehicle. What about the other one? So... But the district court, you're saying, when I go and re-read it, I don't have it in front of me, unfortunately. She's relying on the fact that the shooter was in front, even though the bullets were going in the side. She recognized, in fact, I believe, that there was a dispute of fact around the location of the officer, but for some reason decided that that wasn't a significant material dispute of fact, even though that is key to the question of whether or not the car is being used as a deadly weapon. What about the other officer? There's no question that London was never in front of the vehicle. The two shooters, London on the side was not in front of the vehicle. Mary could believe that no one was in front of the vehicle and the police knew that. Correct. Okay. Thank you. You'll have your rebuttal. Thank you. Good morning, Your Honor. John Latchney for Appalachian Zeke Ryan. It's a privilege to be here today. You're arguing for the full 15 minutes? No, I'm going to share my time with the other officers' counsel. It will split in half. This court has indicated on a number of occasions that deadly force is justified against a driver who objectively appears ready to drive at or into an officer, and that was in Hermas, Cass, and Latitas. And there has been no dispute, as near as I can tell, that Zeke Ryan was 10 yards away from this vehicle. Yeah, but when he, just getting to the heart of the matter, it seems to me there's a genuine issue of material fact that at the precise moment he shot, he was at the side. I mean, the forensic evidence, the bullet holes were on the side, on the passenger side door. So why doesn't that at least create a genuine issue of material fact on the Fourth Amendment question? Okay. In terms of what we're looking at, we're looking at the officer's perception. Because we're focusing on the officer, not what the defendants did necessarily. The officer's perception of what he saw. He saw this van violently back into his cruiser. He saw that the vehicle was then pointed toward him. To put it into perspective, Judge Murphy, an officer would have very little time to react if that vehicle started to move forward. Just some simple math I did before we came. If the vehicle, may I, Judge? If the vehicle went 25 miles an hour, it's accelerating to 36.67 feet per second. Or even at 20 miles an hour school zone speed, 29.33 feet per second. If the officer's 30 feet away, that means that that van could reach him in one second. Okay, but if at the time the officer's pulling the trigger, the van is moving zero feet per second and he's to the side, why isn't that contrary to Godowa, which is a case I had? I mean, I remember vividly that video. He's to the side. It's not past him. He's creeping along. There are factual differences. The officer's to the side. The Z-28 is kind of abreast with him, moving slowly. And the officer shot then. It wasn't past him yet. I read your decision, Godowa, Judge Kethledge. And there was a period of time. He was an officer on a bike. There was a period of time where the Z-28 could have backed into him, but by the time he shoots, the Z-28 is abreast of him. I thought Godowa was distinguishable in a number of ways. Number one, he had an underage drinker. He hadn't committed any serious offense. You don't get to shoot underage drinkers, but not other people. Well, no, no, but obviously that's the first element is serious in the crime in terms of the Graham analysis. It's the only reason I mention it. The young man had answered questions. He was cooperative. He admitted drinking. After agreeing initially to a field sobriety test, he decided to leave. Then he decides to drive the car, and the officer runs alongside the car with his gun drawn. And the bullet was shot through the back passenger window. So in that particular case... It was sort of angled like this. Yeah, but in that particular... It was in the past, though. Yeah, he was almost shooting from behind. But not quite. Well, I mean, he was not... He was at the C-pillar of the vehicle. Okay. Holes to trigger. But the point is he wasn't in front of the vehicle like Officer Ryan was. I don't think there's any dispute that at one point Officer Ryan was in front of that vehicle. Yeah, at one point. But, I mean, again, to go to the heart of the matter, as Judge Murphy put it, the officers... A jury apparently could find that the officers shot the six rounds when nobody was in front of the vehicle. They were to the side of the vehicle. And why isn't that at least a Fourth Amendment violation given that at that time they weren't in the path? As in Gottawa. Under Mullinex v. Luna, the question of whether the officer acted unreasonably has to be shown beyond debate. Is this qualified immunity we're talking about now? Yeah. How about the Fourth Amendment issue, just for starters? The question is would a reasonable police officer perceive a significant threat to his life in that moment? Officer Ryan had just seen this vehicle suddenly back into his vehicle and he was in front of the path. And as Judge Rogers pointed out, where is this vehicle going to go? If they're trying to escape, which they clearly manifested their intent... That makes sense to me. I don't think you had to show that he was in gear or that he even intended. If it looks like, most people would look at it and he backs up when told blatantly and yelled in his ear, don't do this, he does it. So he's clearly defying the police. He backs up and one would think that a getaway car would then zoom forward. The problem I'm having is the problem that we ended up our discussion with your opposing counsel, which is the contention that at the point in which the shooting started, he was beside the vehicle rather than in front of the vehicle. I looked at the video too, but I don't remember it with the clarity that you all do. Was he at the side or was he... If you look at the bullet holes, if the bullet holes were from bullets fired by the person who was supposedly in front of the vehicle, then it looks like you can really contend that no jury would be able to conclude that he was beside the vehicle instead of in front of the vehicle when he shot them. I think opposing counsel conceded that Officer Ryan started out on the driver's side and moved to the left. And I think Officer Ryan also testified that he was moving as he was shooting. He was moving to the left as he was shooting. But let's say a jury could find, based on the forensic evidence, that all the shots were fired while he was in fact on the side. I mean, we're inviting you to explain why your client wins anyway in that instance as opposed to sort of resisting that hypothetical, so to speak. Well, I think the question is... Pardon me, it's not because of some other officers in front of the vehicle. No, there's no question. He's the only one who's quote-unquote threatened by this vehicle? That is correct, Your Honor. Did Ryan say anything about Officer East? Did he even know where Officer East was? I don't know that he was... Officer East ran back in the way the car would have gone forward. And I'm curious whether his testimony was... I'm sure Officer London was nowhere near the line of authority, and I assume that he'll testify he was shooting because he was worried about his colleagues. That's what he did. So was Ryan shooting because he was only worried about himself? Ryan was shooting because he feared for his own safety. That's what he testified to. It's in the record. I think this question, from our standpoint, hinges on what Judge Murphy observed, I think, early on is this case doesn't fall into any neat category in terms of the Supreme Court's most recent jurisprudence about... Our cases are good enough. I mean, Gattawa, the officer stood aside, had previously been in the path. He stood aside. He just shot once and killed him. That was 2015, so why doesn't that indicate, even if you were once in the path, you can't shoot the vehicle as it passes by you out of fear you're going to be hit? Well, again, I think in Gattawa it was... I mean, there was no question the officer was not in front of the vehicle. Clearly, when this incident began... I mean, we're talking split-second here. The vehicle moves back, crashes into the vehicle. I mean, the officer has to make a split-second decision because he's the one standing in front of the vehicle. I don't think there's any dispute, even they conceded that he was standing to the right of the driver's side and he ended up moving toward the passenger side, trying to get to a point of safety. And Officer Ryan testified the reason he fired was because he was afraid he was going to get run over. I see my time is up. Thank you. Okay. Very well. We'll hear from your co-counsel. Mel Lute for Officer London. May it please the Court and Counsel. As the Court has pointed out, Officer London had a different perspective. He was on the side, and he fired... It's kind of interesting when you look at the video. You have two officers making independent but simultaneous assessments that there's danger. And that's very important because we know that there's danger and we know that the perspective of the officer is paramount in the moment, in real time. And as my colleague suggested, you could look at the video frame by frame, but we know that that's not what happens to the officers at that moment. They don't have the luxury of a frame-by-frame analysis. They're watching something unfold. And on this issue of where Ryan was, just to touch on that, it's not like there's a lane, there's a direct way for Ryan to know how this van is going to come at him. And he says, I was trying to figure out whether I could outrun this van, and I didn't know which way it was going to go, but I know it was going to come at me. And I had to try to outrun it, and I knew I couldn't. Well, London is making that same assessment from his perspective. He's looking at it going, Ryan is in trouble here. My colleague is in trouble. I have to use deadly force to protect him, because we just don't know at the time. Now, obviously, in hindsight, we've got the video, we can see what happened, but they don't know that at the time. And they are responding in a way that suggests they're both coming to the same conclusion simultaneously. The test is they have to have probable cause of a substantial injury, is the generic test. So I suppose London, the case for qualified immunity or no Fourth Amendment violation for London hinges on the second where he thought that Ryan might be in front of the van? Correct. He's never concerned for his own safety, other than the fact that it's a kind of dangerous situation, you don't know who the people are. And if I could just back up a second, because in representing a lot of police departments, this was a critical moment where Sergeant East approaches the driver's door with a Slim Jim. He says to London and he says to Ryan, cover me. And that's not an insignificant order. That is a very, very precise and significant order and it obligates London, who doesn't even work for that law enforcement agency, but as a fellow law enforcement officer, as soon as he says cover me, London is required to cover that man with his weapon. And so is Ryan. And they continue to cover as this situation unfolds. When East says don't shoot and he turns, he loses perspective of what is going on. And the district court points that out in its decision very significantly. In those moments, in those seconds or half a second, something violent and dangerous occurs. And it's violent, it's dangerous, it's a threat, so much so that two officers who've just been told not to shoot, they in their law enforcement experience immediately perceive that this is a threat that requires something that they hope they'll never have to do in their professional career. And that is to employ their firearm. Where did the bullets from your client go? Actually in a very tight shot group in the passenger door of the van. Because he was shooting from that perspective. How many holes, are all the shots go through that passenger door? And through the window, that window was also shot out, so there I think are four holes in the door and then there were some rounds that went into the window as well. Both from both officers. I realize I don't have much time to think, but what's the thought that shooting into the passenger side will actually help stop this vehicle? That's a good question. And London testified very directly that he was firing at the driver. But he was at that angle, so it's the only angle he had. And his shot group suggests exactly that, that he was trying to be very focused and very deliberate in his aim to try to eliminate the threat, just as he was trained to do. I also think that the record reflects discipline on the part of the officers from the standpoint that, like in some of these other cases where we have 12, 13, 15 shots fired, this was a very limited engagement and it did stop as soon as the threat was perceived to have stopped. But these are tough cases and the video is helpful, but it's not everything. The testimony of the officers is important because they're seeing it through their own eyes. The video doesn't capture everything, but it certainly gives us a sense of the dynamic nature of this encounter. And the one thing I would also... Can you summarize now just for me what the answer, the core answer is to the argument that a juror could believe that no one was within the range of danger because there's evidence that bullets all went into the side of the vehicle? Yes, Your Honor. I think the answer to that is in the scope of... It's just everything's happening too fast? Not necessarily, but it's entirely unpredictable where that van is going to go. To say that you're not in front of it... No, Your Honor, but... But if you're Ryan, you've been trained to shoot and move. He is shooting and moving, trying to move his body out of the direct path of the danger. So he's shooting and moving. He doesn't know precisely where that van is going to go. Would it have been possible for the van, had it come forward, to turn towards where he now is on the side? Because there were other vehicles. I just forget the layout. Right. And it was a circular driveway, so it was a very congested type of situation. But again, from Ryan's perspective, he felt naked and exposed in the position that he was in to harm from that vehicle. So whether it would have come toward him, sideways or some way, he certainly felt that it could have. Do you think... We do these analyses individually for each officer. And do you think... Do you have any argument as to why it would have been harder... Why a jury could not find that your... It might be harder for your client, Officer London, to know in the moment whether Ryan's out of harm's way or not. Let's say, arguably, if he gets to the side, he's out of harm's way. There's a lot of things going on. It might be harder for your client to appreciate that in the second or so before he has to make a decision. Do you have an argument as to why a jury could not attribute to your client in particular, knowledge about where Ryan is at this very moment that your client pulls the trigger? If that makes sense. I think I understand what you're asking. Your guy can't watch the van and Ryan at the same time. Correct. But from a tactical perspective, they began side by side. London begins to move in this direction. And then Ryan begins to move as the van is in motion. So from a tactical perspective, he knows Ryan is to his right and he perceives that the van is going to go from his left to right. And that may be the extent to which he was thinking at that time. He's in this general area of danger and there's nothing between him and the van. Maybe that's the best way to put it. London knows there's nothing between the van and Ryan that is going to protect Ryan. From a cover perspective. And so he makes his decision to fire on that basis. I see I'm out of time. Thank you, Your Honors. Thank you. Thank you guys both for your arguments. We'll hear a rebuttal. Thank you. I will begin my rebuttal where you just ended in terms of what London could have believed at the time that he was shooting. First of all, there's no testimony that London perceived that the van would move from the left to the right. So that's speculation. Would it have been possible, given the layout, that the van could have turned towards where the officers were when they fired? Sure, the van could have turned in many different directions but there's no indicia on the record that the van ever turned in any direction. But one could argue, so an imposing argument here would be, yeah, where they're standing it is off to the side but had the van actually resumed movement and this time forward it could have turned and run over, say, Officer Ryan. And they were justified to prevent that. Well, that would be a completely speculative justification. That would not find any facts in the record to support it. But then, I mean, it could have been, if there remained a possibility that the van could have run over Officer Ryan, given the layout of the vehicles and individuals when the officers shot, then why isn't that the equivalent of Ryan still being in front of the vehicle? Well, because the case law, well, first of all, tells us that a speculative threat is not sufficient, right? But it's not speculative. He's there. So just like it's not speculative if he's standing right in front, if I'm off to the side and the van could easily just turn and come after me, then it's the same threat that is when he's in front and it seems to be common ground. He could shoot when he's in front. Well, there are many different directions that the van could have gone, I believe, based on the video. I will say that. But what is completely lacking in this record is any indicia that the van was going to move forward. And what the record does show us is that London shoots at the van while it's moving backward toward an unoccupied police cruiser or at the time that it is stationary. And he testifies he wants to stop the van. Ryan is not in harm's way at the time that he shot, the time that London shoots, because the van is, again, moving backwards. So he's not in the pathway of the vehicle or the vehicle is completely stopped and not moving forward at all. In fact, the wheels are spinning backwards. London tries to justify his shooting and to put something in the record that the van was going to move forward because I believe that he recognizes at this point, and the Council should recognize, that there has to be some indicia that the van would move forward. The only little bit of evidence in that of this... Let's assume we think there is such an indicia about moving forward. Judge Rogers has talked about that. Let's just assume we think, yeah, that looks like it could be the next step. Then what? Then I believe that there needs to be some kind of, again, evidence, some articulable, objectively reasonable basis to believe, and this goes back to Gaddawa, Judge, that there was actually someone in the pathway of the vehicle that could be in danger. Do you want to go ahead? It's kind of separate. Okay, just real quick. In Gaddawa, there was no way the driver of the vehicle, the decedent, could have turned the vehicle. At the point he shot, there's no way that that vehicle could have turned and hit the officer. It was a very tight area. The car was no farther away. It's here. I'm at the C pillar, but there was no way. If one looks at this record and one could say, well, the van, if it were to move forward again, could have, given the layout here, he could have put in a certain amount of turn and gone for, say, Officer Ryan, then why isn't that a pretty significant distinction from the Gaddawa case? Well, I think that the court can look at other cases where summary judgment actually was granted, where the other actions, prior encounters with the individual who was driving the van would show that he was willing to continue violent and threatening behavior. There's no facts like that in the record here. In other cases, it's been a high-speed chase. Officers have been struck by the car. There were occupants inside a car around there. It was busy in the area. You watch the surveillance video here. You see there's no one on the street at all. So all of those other indicia of the threat are simply not present here. My question was just more legal. A lot of these cases, court doesn't decide step one and then they go to step two on qualified immunity. I'm curious of your view of how step two of qualified immunity interacts with state law immunity. State law immunity, I read the text of the statute, seems to have different language, bad faith or reckless. What would you say? Say I thought there wasn't a case directly on point for purposes of step two qualified immunity. What would that mean for the state law? That the state law analysis should absolutely be put in front of the jury. That was an error in this case. The judge failed to have any kind of separate analysis. Reckless? I'm sorry. The reckless analysis under state law does not have a clearly established requirement in any way. It's simply not part of it. It's just looking at the entirety of the conduct. There is no segmented analysis. The entirety of the officer's conduct on the scene taken into consideration to determine the totality of their behavior and whether it was reckless. It's a much broader analysis and the court has held that. Clearly established is just simply not an issue. Even if the court, although I do believe that the case at law is clearly established and has been by these judges in fact. However, that is not necessary for state law analysis and it must be given to the jury to evaluate on that. The material disputed facts on that. The state law issues and the state law claims in addition to the federal claims. Constitutional claims. We thank you all for your arguments. Very well argued case. The case will be submitted.